**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BO TUREK, individually, and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 25-cv-01842 |
| v. | Judge Mary M. Rowland |
| REVOLUTION GLOBAL, LLC, et al., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Bo Turek ("Turek"), individually and on behalf of others similarly situated, brings this seven-count action against Defendants Revolution Global, LLC, Revolution Global Health, Inc., Revolution Illinois Holdings, LLC, Revolution Core Holdings, LLC, Revolution Ventures, IL, LLC, Revolution Ventures IL II, LLC, Revolution IP Ventures, LLC, and Revolution Cannabis – Delavan, LLC (collectively, "Defendants") for unlawfully marketing and selling certain "cannabis-infused products" ("CIPs"). Defendants have moved to dismiss [24] all of Turek's claims.

For the reasons stated herein, Defendants' Motion to Dismiss [24] is granted.

## I.    Background

The following factual allegations taken from the operative complaint [1-1] are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

Defendants are a group of interrelated companies that process, manufacture, and sell cannabis products in Illinois. [1-1] ¶¶ 17–41. Among Defendants' offerings are

1

vapable products such as cannabis oil vaporizer cartridges, disposable oil vaporizers, resin, rosin, budder, badder, crumble, and shatter (collectively referred to as "Vapable Oils"). *Id.* ¶ 2. The consumption of Vapable Oils does not utilize combustion. *Id.* ¶ 3. Instead, Vapable Oils are used in conjunction with a device to "vaporize" their contents, which are then consumed via inhalation. *Id.* ¶ 2. This consumption process is colloquially referred to as "vaping" or "dabbing." *Id.* ¶¶ 2, 86.

The production, consumption, and sale of cannabis is heavily regulated in Illinois and is subject to the requirements of, among other things, the Illinois Cannabis Regulation and Tax Act, 410 ILCS 705/1 *et seq.* ("CRTA"). [1-1] ¶¶ 3, 60. As it pertains to this case, the CRTA contains two general categories of cannabis products that are permitted to be manufactured, packaged, and sold to retail consumers in Illinois: (1) cannabis concentrates, and (2) CIPs. *Id.* The CRTA defines those categories as follows:

> "Cannabis concentrate" means a product derived from cannabis that is produced by extracting cannabinoids, including tetrahydrocannabinol (THC), from the plant through the use of propylene glycol, glycerin, butter, olive oil, or other typical cooking fats; water, ice, or dry ice; or butane, propane, CO2, ethanol, or isopropanol and with the intended use of smoking[1] or making a cannabis-infused product;

> "Cannabis-infused product" means a beverage, food, oil, ointment, tincture, topical formulation, or another product containing cannabis or cannabis concentrate that is not intended to be smoked.

*Id.* ¶ 61. (citing 410 ILCS 705/1-10).

---

[1]The CRTA defines "smoking" as "the inhalation of smoke caused by the combustion of cannabis." *Id.*

The distinction between cannabis concentrates and CIPs is significant from a regulatory perspective. For instance, an Illinois state resident over the age of 21 is permitted to cumulatively possess up to 500 milligrams of tetrahydrocannabinol ("THC") contained in a CIP, but up to 5 grams of cannabis concentrate. *Id*. ¶ 79 (citing 410 ILCS 705/10-10(2)). Additionally, the maximum THC limit for one package of a CIP is no more than 100 milligrams. *Id*. ¶ 71 (citing 410 ILCS 705/55-21(k)). By comparison, cannabis concentrates are not subject to any per package limits. *Id*. ¶ 8.

On or around May 27, 2024, Turek, a medical marijuana user, purchased a 0.5-gram (500 milligram) Peach Crescendo disposable vape cartridge for $60 from Cannabist dispensary in Chicago, Illinois. *Id*. ¶¶ 110–112. Turek contends that, under the CRTA, the product he purchased was a CIP, not a cannabis concentrate, and yet was improperly labelled and marketed as a cannabis concentrate by Defendants. *Id*. ¶¶ 108, 114, 115. Turek alleges that he relied on Defendants' representations when deciding to purchase the product. *Id*. ¶ 117. Turek alleges he did not know the Vapable Oil he purchased was actually a CIP that was unsafe and not compliant with Illinois law and that he would not have purchased the product had he known so. *Id*. ¶¶ 117–119.

On January 17, 2025, Turek filed this instant action, on behalf of himself and others similarly situated, against Defendants in the Circuit Court of Cook County, Illinois. [1-1]. Turek's Complaint asserts that Defendants' misrepresentations constituted a violation of the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 ILCS 510/1 *et seq*. (Count I) and the Illinois Consumer Fraud and

3

Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.* (Count II), common law fraud (Count III), fraudulent concealment (Count IV), a breach of express warranty (Count V), a breach of implied warranty (Count VI), and unjust enrichment (Count VII). *Id.* ¶¶ 128–256.

On February 21, 2025, Defendants removed Turek's action to this Court, contending that diversity jurisdiction over Turek's claims exists pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). [1].

On August 12, 2025, Defendants moved to dismiss all of Turek's claims. [24].

## II.   Standard

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere

labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

When a complaint alleges fraud, the heightened Rule 9(b) standard applies, requiring the pleading to "'state with particularity the circumstances constituting fraud.'" *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (quoting Fed. R. Civ. P. 9(b)). "While the precise level of particularity required under Rule 9(b) depends upon the facts of the case, the pleading ordinarily requires describing the who, what, when, where, and how of the fraud." *Id.* at 737 (internal citation and quotations omitted). Common-law fraud claims "must be pleaded with the detail required under Rule 9(b)'s heightened standard." *Newman v. Metro. Life Ins.* Co., 885 F.3d 992, 998 (7th Cir. 2018). Rule 9(b) also applies to claims of deceptive conduct brought under the ICFA and fraudulent concealment. *Camasta*, 761 F.3d at 737 (ICFA); *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012) (fraudulent concealment).

**III.    Analysis**

Defendants bring several arguments in support of dismissal. Some affect the entire Complaint. Others target specific claims. The Court addresses each in turn.

### A. Classification Dispute (All Counts)

Defendants first contend that the entire basis for Turek's suit is legally erroneous because Vapable Oils are not in fact CIPs under Illinois law but are properly classified as cannabis concentrates. [25] at 6–9. Therefore, Defendants maintain, there was never a misrepresentation. *Id*. Turek disputes this and continues to maintain that Vapable Oils are properly classified as CIPs under a theory that "smoking" is not equivalent to "vaping." [28] at 3–8.

Though the parties each cite various Illinois statutes and regulations supporting their respective interpretations, neither party has cited any case law—state or federal—dealing with the classification of cannabis products under the CRTA. As such, it appears this is an issue of first impression involving a novel question of Illinois state law. As the Seventh Circuit has explained, "state courts are the ultimate expositors of their own laws." *Smart Oil, LLC v. DW Mazel, LLC*, 970 F.3d 856, 863 (7th Cir. 2020) (citation omitted). It is imprudent for this Court to be the first to address this highly technical state law issue. While principles of federalism, of course, don't preclude this Court from doing so, they certainly caution against it.

Though recognizing that Turek's case collapses if Defendants' Vapable Oils are, in fact, concentrates, the Court is not prepared to make a dispositive ruling on this novel issue of state law at stage in the case, especially where, as explained below, dismissal is warranted on other grounds. *McKenzie v. Progressive Treatment Sols.,*

6

*LLC*, No. 25 CV 1768, 2026 WL 636741, at *6 (N.D. Ill. Mar. 6, 2026) (doing the same based on similar CRTA allegations).

### B. No Private Right of Action (All Counts)

Defendants additionally contend that the CRTA does not have a private right of action and therefore Turek's claims must fail. [25] at 9–12. But Turek does not claim a private right of action under the CRTA in his Complaint. He instead uses Defendants' alleged misrepresentations about CRTA compliance as the basis for his claims. While the Court recognizes Defendants' point that Turek may be artfully attempting to bypass the CRTA's lack of a private right of action by bringing his action under other theories, Defendants present no binding authority establishing that this is improper for the claims brought by Turek here.[2] And in fact, the limited authority that this Court has identified support Turek's approach. *See e.g.*, *Gainer Bank, N.A. v. Jenkins*, 284 Ill. App. 3d 500, 672 N.E.2d 317, 318–19 (1996) ("Plaintiff first contends that the Act is inapplicable because it does not create a private right of action. Because defendant is not suing under the Act, but invokes it merely to prove violations of the [ICFA] … plaintiff's argument fails."); *Ornelas v. Safeway Ins. Co.*, No. 88 C 3583, 1988 WL 102232, at *1 (N.D. Ill. Sept. 26, 1988) (holding that a

---

[2]At best, Defendants point to *Vill. of McCook v. Illinois Bell Tel. Co.*, 335 Ill. App. 3d 32, 780 N.E.2d 335, 341 (2002), which found that the plaintiff's contract claims constituted impermissible attempts to enforce a statutory provision that had no private right of action, but Defendants make no attempt to explain why the logic of *McCook* necessarily extends here. Defendants next cite 410 ILCS 705/45-5(d), which states that the Illinois Attorney General may enforce certain violations of the CRTA as an unlawful practice under the ICFA, but that section, by its own terms, does not explicitly bar private parties from bringing suits for injuries caused by false statements regarding CRTA compliance.

plaintiff may predicate an ICFA claim on a defendant's violation of an Illinois Department of Insurance regulation, which itself did not have a private right of action).

As such, the Court is not persuaded that the lack of a private right of action in the CRTA bars Turek's claims.

### C. Actual Damages (Counts II to VII)

Defendants next posit that Turek's claims fail because he has not alleged actual damages.[3] [25] at 13–15. Turek contests this, arguing that he has pled damages in that he "would not have purchased these Vapable Oils had [he] known that it was not legal, did not have appropriate warnings and information on the packaging and product, and did not have any dosing instructions." [28] at 12 (citing [1-1] ¶ 118). Turek's theory of damages is also referred to an "overpayment" theory. [34] at 4.

As a preliminary matter, the parties' briefing confuses the concepts of actual damages and Article III standing. These are analytically distinct. *Spector v. Mondelēz Int'l, Inc.*, 178 F. Supp. 3d 657, 673 (N.D. Ill. 2016) ("[T]he question of whether a plaintiff has standing to bring suit, and thus whether the court has jurisdiction to

---

[3]Counts II to VI require a plaintiff to allege actual damages. *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 942 (N.D. Ill. 2023)(ICFA); *Dloogatch v. Brincat,* 396 Ill. App. 3d 842, 920 N.E.2d 1161, 1169 (2009) (fraud); *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 760 (N.D. Ill. 2015) (express warranty); *Solvay USA v. Cutting Edge Fabrication, Inc.*, 521 F. Supp. 3d 718, 725 (N.D. Ill. 2021) (implied warranty). Although loss is not an element of unjust enrichment (Count VII), an unjust enrichment plaintiff must show a detriment, which this Court will treat, for present purposes, as a functional equivalent of actual damages. *Lipton v. Chattem, Inc.*, No. 11 C 2952, 2012 WL 1192083, at *4 (N.D. Ill. Apr. 10, 2012) (doing the same). UDTPA claims (Count I) do not require actual damages, only a risk of future harm. *Kurowski*, 659 F. Supp. 3d 942–943 (N.D. Ill. 2023).

hear the controversy, is separate from the question of whether a plaintiff has a cause of action, and that constitutional standing may exist even where a cause of action does not." (citation omitted). So, while cases cited by Turek such as *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011) and *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963 (7th Cir. 2016) may endorse Turek's "overpayment" theory as a basis for Article III standing, they do not automatically mean Turek has alleged actual damages to support his causes of action.

A plaintiff can, in some instances, adequately plead actual damages based upon an "overpayment" type of theory.[4] *See Rudy v. Fam. Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1160 (N.D. Ill. 2022) (gathering cases recognizing that "numerous courts have permitted ICFA claims to proceed where, as here, a plaintiff claimed that defendant misled her as to the nature of the product she was buying, and she either paid more for the product than she otherwise would have or would not have purchased the product had she known the truth."). Common among those cases, however, were specific misrepresentations as to an ingredient or feature not present within the product itself and that could affect its value. *See, e.g., Rudy*, 583 583 F. Supp. 3d at 1556, 1160 (allowing an overpayment theory where an almond product was not, in fact, smoked over an open fire but was flavored using natural smoke flavor, despite being advertised as "smoked"); *Terrazzino v. Wal-Mart Stores, Inc.*, 335

---

[4]The cases are cited by the parties to address actual damages in the context of ICFA claims. Whether the analytical reasoning of those cases extends to Turek's remaining claims is unclear. But because the parties treat the actual damages analysis the same across all counts, the Court will do the same.

9

F. Supp. 3d 1074, 1079 1084 (N.D. Ill. 2018) (accepting plaintiff's overpayment theory where pita chips were labeled as "All Natural," but allegedly contained artificial ingredients); *McDonnell v. Nature's Way Prods., LLC*, No. 16 C 5011, 2017 WL 1149336, at *1–3 (N.D. Ill. Mar. 28, 2017) (allowing an overpayment theory where vitamins were advertised as "Made in the USA," but allegedly contained foreign-sourced ingredients); *Muir v. Playtex Prods., LLC*, 983 F. Supp. 2d 980, 990 (N.D. Ill. 2013) (permitting an overpayment theory where a diaper product was not superior in odor control to its competitors, despite being advertised as such). Turek's allegations are different. He does not allege any misrepresentations as to an ingredient or feature of the Vapable Oil he purchased (for instance, at no point does he say Defendants misstated the amount of THC in the Vapable Oil). Instead, his allegation is that Defendants improperly labeled and marketed the Vapable Oil he purchased as concentrate and that he would not have purchased the Vapable Oil had he known it was a CIP.

Even assuming Turek's version of the "overpayment" theory is cognizable under Illinois law, he has not sufficiently plead facts demonstrating that he paid "more than the actual value of the [product]." *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). For instance, Turek alleges he would not have bought the Vapable Oil product he purchased if he had known it lacked the "appropriate warnings and information on the packaging and product" and "dosing instructions" required for CIPs under Illinois law. [1-1] ¶¶ 115, 118. Yet Turek fails to provide any facts connecting the

absence of warning labels or dosing instructions to the value of the Vapable Oil he purchased.

Turek next contends that Defendants' Vapable Oils are substantially less valuable or worthless simply due to their illegality. [1-1] ¶ 118. But he pleads no facts connecting Defendants' alleged CRTA noncompliance to a reduction in the value of the Vapable Oils he purchased. And even if the Court were to construe Turek's diminished-value allegations as rooted in some type of fear of criminal prosecution, his pleaded facts undermine that reading. As an Illinois resident, [1-1] ¶ 17, the cannabis product he purchased—a 0.5 gram disposable vape cartridge—was not illegal to possess, even if classified as a CIP. 410 ILCS 705/10-10(2) (allowing "no more than 500 milligrams of THC" for CIPs for Illinois residents). Moreover, as the Circuit Court of Cook County explained in *Turek v. Imperial Products, LLC, et al.*, Case No. 2025 CH 04187, Turek's status as a medical cannabis user, [1-1] ¶ 110, forecloses any allegations of illegality. [48-2] at 4 (explaining that under 410 ILCS 130/7 "all medical cannabis products purchased by a qualifying patient from a licensed dispensary are lawful.").

At most, what Turek pleads is a subjective assessment that, too him, a 0.5-gram disposable vape cartridge labeled as a CIP is worth less than the same exact 0.5-gram disposable vape cartridge when labelled as a concentrate. This is not enough. Without any "facts to support his conclusory assertions of actual damage, [Turek] has not sufficiently pleaded that he paid more than the actual value of the merchandise he received." *Camasta*, 761 F.3d at 740. *See also Rodriguez v. Cresco Labs, Inc.,* No. 25

11

C 633, 2025 WL 3215872, at *3 (N.D. Ill. Nov. 18, 2025) (finding allegations that a plaintiff "would not have purchased [a cannabis] product had he known that it was not legal" insufficient to support actual damages); *Sabo v. Wellpet, LLC*, 250 F. Supp. 3d 332, 337 (N.D. Ill. 2017) (finding allegations that a plaintiff "paid more for the products than they were actually worth," "without any factual foundation to moor his subjective estimation of the products' worth" were "too speculative to support an inference of actual damages.").

Counts II to VII of the Complaint, therefore, must be dismissed.

### D. UDTPA (Count I)

In Count I, Turek claims that Defendants' actions violated the UDTPA. [1-1]¶¶ 128–141. Turek's response brief stipulates to dismissal of his UDTPA claim. [28] at n. 2. As such, the Court dismisses Count I without prejudice and declines to address Defendants' arguments for dismissal of Count I.

### E. Fraud (Counts II, III, & IV)

In Counts II, III, and IV, Turek claims that Defendants' actions violated the ICFA and amounted to both common law fraud and fraudulent concealment. [1-1]¶¶ 142–213. Although the claims are dismissed for failure to plead actual damages, the Court will address some of Defendants several arguments for why Turek's fraud claims fail.

i. <u>Failure to Plead Fraud with Particularity</u>

Defendants start with two Rule 9(b)[5] arguments. [25] at 18–19. The first is that Turek fails to plead fraudulent intent. *Id.* The second is that Turek does not identify any misrepresentations that he relied upon when making his purchases. *Id.*

ICFA, common law fraud, and fraudulent concealment claims require a showing of intent. *Kelly v. Sears Roebuck & Co.,* 308 Ill. App. 3d 633, 720 N.E.2d 683, 690–692 (1999). Reliance, however, is only an element of common law fraud and fraudulent concealment. *Zeikos Inc. v. Walgreen Co.*, No. 23 C 303, 2023 WL 8281523, at *5 (N.D. Ill. Nov. 30, 2023) (common law fraud); *Gvozden v. Mill Run Tours, Inc.,* No. 10-CV-04595, 2015 WL 4656663, at *13 (N.D. Ill. Aug. 5, 2015) (fraudulent concealment). Reliance is not a required element for an ICFA claim. *Cozzi Iron & Metal, Inc. v. U.S. Off. Equip., Inc.*, 250 F.3d 570, 576 (7th Cir. 2001) ("the Illinois Supreme Court has repeatedly held that, unlike a claim for common law fraud, reliance is not required to establish a consumer fraud claim."); *Sears Roebuck,* 720 N.E.2d at 690 ("Reliance on the part of the plaintiff is not an element of the Illinois Consumer Fraud Act"). So, while Defendants' intent arguments apply to Counts II, III, and IV, the reliance arguments only affect Counts III and IV.

As to intent, Turek's allegations are sufficiently plead. "Rule 9(b) does not require particularity with respect to the defendant's mental state. Rather, the complaint need

---

[5]Turek brings his ICFA claim under two theories: one alleging deceptive conduct and the other alleging unfair practices. [1-1] ¶ 142–190. Defendants' Rule 9(b) arguments are applicable only to the former theory. *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.,* 631 F.3d 436, 446 (7th Cir. 2011). Although Defendants contest certain elements of Turek's unfair practices theory in their reply brief, [29] at 10, the Court cannot consider arguments not presented in an opening brief. *Eberhardt v. Walsh,* 122 F.4th 681, 687 n.4 (7th Cir. 2024).

only afford a basis for believing that the plaintiff could prove scienter." *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 650 n. 7 (7th Cir.1997) (cleaned up). Turek's Complaint provides a sufficient basis for believing that he could eventually prove intent. According to Turek, Defendants mislabeled their Vapable Oils as cannabis concentrates to "sell Vapable Oils using the 5-gram limit applied to concentrates, instead of the lower 500-milligram CIP limit." [1-1] ¶ 11. This enabled Defendants "to sell up to 11 times the amount of CIP an adult-use consumer is allowed to lawfully possess at one time, thereby exceeding the limits which could be sold to a consumer in a single transaction, and generating significant profits for Defendants." *Id.* ¶ 12. Taking these allegations as true, the Court finds that Turek has plausibly alleged scienter based on a theory that Defendants knowingly mislabeled their products for profit maximization. Turek's intent allegations, therefore, satisfy Rule 9(b)'s requirements.

As to reliance, Defendants' arguments are persuasive as to Count III (common law fraud) but not Count IV (fraudulent concealment). The difference is due to the specific elements of those claims. The elements of common law fraud in Illinois are: "(1) a false statement of material fact by defendant; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Sears Roebuck*, 720 N.E.2d at 692 (citing *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 675 N.E.2d 584, 591 (1996)). By comparison, "to state a claim for common law fraudulent concealment, a plaintiff

14

must allege that the defendant concealed a material fact when he was under a duty to disclose that fact to the plaintiff." *Id.* (citing *Connick* 675 N.E.2d at 593). Stated another way, common law fraud (also known as fraudulent misrepresentation) in Illinois involves reliance on an affirmative misrepresentation, whereas fraudulent concealment involves reliance on intentionally withheld information. *Bauer v. Giannis*, 359 Ill. App. 3d 897, 834 N.E.2d 952, 957 (2005); *see also Heider v. Leewards Creative Crafts, Inc.*, 245 Ill. App. 3d 258, 613 N.E.2d 805, 814 (1993) ("Illinois law supports the notion that fraudulent concealment may be found in the absence of an affirmative misrepresentation.").

Applying this distinction here, Defendants are correct that Turek has failed to plead reliance on any affirmative misrepresentation. Though Turek identifies alleged misrepresentations on Defendants' websites and marketing materials stating that their Vapable Oils are a cannabis concentrate, Turek fails to allege with particularity that he viewed those websites and marketing materials before making his purchases. His conclusory, generic allegations of reliance, [1-1] ¶¶ 116–117, 161, 171, 198, 199, do not withstand Rule 9(b) scrutiny. *Roppo v. Travelers Companies*, 100 F. Supp. 3d 636, 644 (N.D. Ill. 2015) (dismissing a complaint "which merely state[d] that [plaintiff] 'relied upon' Defendants' misrepresentations."). And though Turek specifically claims that he relied on Defendants' warning label representations when making his purchase, the warning label Turek allegedly reviewed contains no misrepresentations: there is nothing about the product being a cannabis concentrate or legally compliant with the CRTA. [1-1] ¶ 115.

Things are different, however, for Turek's fraudulent concealment claim, as that claim *can* be actionable based on reliance on an omission. And Turek sufficiently pleads such an omission in his Complaint. Specifically, he contends that, despite being duty bound under the CRTA to include certain warnings for CIPs, Defendants omitted these warnings from the label of the product he purchased. *Id.* ¶¶ 115, 156, 161. And because Turek pleads that he relied on Defendants' warning label when making his purchase, *id.* ¶ 117, he sufficiently pleads reliance for the purposes of fraudulent concealment.

In sum, Turek adequately pleads fraudulent intent, but fails to plead with particularity reliance on any affirmative misrepresentation by Defendants. For this additional reason, Count III must be dismissed.

### ii.    Mistake of Law

Defendants next contend that Turek's fraud claims fail because Turek alleges a mistake of law, not fact. [25] at 17–18. In Illinois, "misrepresentations or mistakes of law cannot form the basis of a claim for fraud" because "all persons are presumed to know the law." *McIntosh v. Walgreens Boots All., Inc.*, 2019 IL 123626, 135 N.E.3d 73, 84; *see also Kupper v. Powers*, 2017 IL App (3d) 160141, 71 N.E.3d 347, 354–55 ("As a general rule, one is not entitled to rely upon a representation of law because both parties are presumed to be equally capable of knowing and interpreting the law.") (citation omitted); *Capiccioni v. Brennan Naperville, Inc.*, 339 Ill. App. 3d 927, 791 N.E.2d 553, 558 (2003) ("Generally, a deceptive representation or omission of law does not constitute a violation of the Consumer Fraud Act."). In determining whether

16

a misrepresentation is one of fact or law, the "key question" is whether "the defendant misrepresents or omits facts of which he possesses almost exclusive knowledge the truth or falsity of which is not readily ascertainable by the plaintiff." *Kupper,* 71 N.E.3d at 355. Put differently, "[w]here a misrepresentation of law is discoverable by the plaintiff in the exercise of ordinary prudence, it cannot form the basis of an action for fraud." *McIntosh*, 135 N.E.3d at 84–85.

Turek alleges a mistake of law. He asserts that the Vapable Oil he purchased was a CIP and yet was improperly marketed as a cannabis concentrate by Defendants. [1-1] ¶¶ 4, 114. But whether a cannabis product is properly classified as a cannabis concentrate or a CIP is statutory. As Turek is charged with knowledge of the law, he cannot claim to have been deceived by Defendants' classification of their Vapable Oils as cannabis concentrates. Turek could have read the CRTA to determine if the classification was proper. He cannot now allege fraudulent conduct by Defendants based on his failure to do so. *Cresco Labs,* 2025 WL 3215872, at *5 (finding the same based on nearly identical allegations).

Resisting this conclusion, Turek contends that Defendants' alleged misrepresentations constituted mistakes of fact, not law, because "the legal classification of cannabis products depends on the manufacturer's intended end use" and "evidence demonstrating that intent is within Defendants' exclusive control." [28] at 14. The Court is puzzled by Turek's argument. Certainly, the definitions of cannabis concentrate and CIPs in the CRTA appear to depend on some type of "intent." 410 ILCS 705/1-10. Whose intent is unclear. Turek's position, though, is that

17

it is the intent of Defendants which matters. But if so, his Complaint reveals that he knows what that intent is—and has known all along. Indeed, Turek repeatedly acknowledges that Defendants' Vapable Oils are designed to be smoked—and are marketed as such—then applies that understanding to argue that they are CIPs. [1-1] ¶ 3 ("Vapable Oils does not utilize combustion and their consumption is thus not considered smoking for purposes of the CRTA."); ¶ 4 ("Vapable Oils are a type of CIP, as they are intended to be consumed by vaporizing the contents and then inhaling them using a non-combustible heating device."); ¶ 88 ("Despite Defendants' marketing materials expressly stating that their Vapable Oils are intended to be vaporized – not smoked – Defendants market and package their Vapable Oils as concentrates as opposed to CIPS"); *see also id.* ¶ 91, 162. In other words, Turek's own pleading supplies the very fact—Defendants' intent—that he claims was hidden from him. "How, then, can [Turek] say that he could not discover the facts which determine the [Vapable Oil's] classification?" *McKenzie*, 2026 WL 636741, at *7 (rejecting a nearly identical argument based on similar allegations made with respect to intent under the CRTA). He cannot.

In sum, Turek's pleading implicates a mistake of law, not a mistake of fact. For this additional reason, Counts II, III, and IV must be dismissed[6].

### F. Warranty (Counts V and VI)

---

[6]In light of this finding, the Court declines to address Defendants' safe harbor and Section 2Z arguments. [25] at 15–17.

In Counts V and VI, Turek claims that Defendants breached their express and implied warranties that their Vapable Oils were legal, safe, and effective. [1-1] ¶¶ 214–248. Defendants raise several arguments for why Turek's warranty claims should be dismissed, including failure to identify an express warranty, lack of privity, and lack of pre-suit notice. [25] at 20–22. Because it is dispositive, the Court focuses on privity.

In Illinois, express and implied warranty claims require privity of contract between the plaintiff and the defendant. *Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1125 (N.D. Ill. 2019). "There is no contractual privity between a manufacturer and a person who buys from an independent dealer." *Rodriguez v. Ford Motor Co.*, 596 F. Supp. 3d 1050, 1056 (N.D. Ill. 2022).

Turek's allegations indicate a lack of privity with Defendants. He purchased a disposable vape cartridge from Cannabist dispensary, not Defendants. [1-1] ¶ 111. Turek does not dispute this. [28] at 16–18. He instead maintains that the "direct dealing" and "third-party beneficiary" exceptions apply here.

The "direct dealing" exception to privity "applies when there are direct dealings between the manufacturer and the remote customer." *Ford Motor*, 596 F. Supp. 3d at 1056 (quoting *Elward v. Electrolux Home Prods., Inc.*, 214 F. Supp. 3d 701, 705 (N.D. Ill. 2016). Here, Turek does not allege any direct communications Defendants made to him about their cannabis products. He instead points to Defendants' publicly available marketing materials, advertisements, and product labels—none targeted to him individually—maintaining that these suffice as "direct dealings." [28] at 16–17.

19

Courts in this district are split on whether generalized advertisements directed to the public at large are sufficient to establish privity under Illinois law. Compare *Miller v. Emerson Electric Co.*, No. 1:23-CV-03797, 2025 WL 964905, at *5 (N.D. Ill. Mar. 31, 2025); *Gurrola v. Ford Motor Co.*, 774 F. Supp. 3d 959, 976 (N.D. Ill. 2025) (generalized advertising insufficient) with *Elward*, 214 F. Supp. 3d at 705; *Rosenstern v. Allergan, Inc.*, 987 F. Supp. 2d 795, 805 (N.D. Ill. 2013) (generalized advertising sufficient). As the parties have not provided any binding authority on this question (nor has the Court found any), the Court must predict how the Illinois Supreme Court would decide the issue. *Nationwide Agribusiness Ins. Co. v. Dugan*, 810 F.3d 446, 450 (7th Cir. 2015). Given that the origins of the exception stem from a case where a buyer's employees met with a manufacturer to discuss product specifications, *Manley,* 417 F. Supp. 3d at 1123, and "the narrow purview of [the] exception under Illinois law," *Emerson Electric*, 2025 WL 964905, at *5, the Court is not persuaded that the Illinois Supreme Court would conclude that mass-market advertisements alone create privity between a customer and a manufacturer. Holding otherwise would be a significant expansion of the exception, which the Court is not prepared to do. *King v. Damiron Corp.,* 113 F.3d 93, 97 (7th Cir. 1997) ("federal courts sitting in diversity ought to be circumspect in expanding the law of a state beyond the boundaries established in the jurisprudence of the state.") (citation omitted). Accordingly, because Turek's Complaint identifies only "ordinary general communications between manufacturers and consumers, not specific, direct communications with

20

[Turek] when [he] made the purchase," *Emerson Electric*, 2025 WL 964905, at *5, the "direct dealing" exception does not apply.

The "third-party beneficiary" exception is also inapplicable. That exception applies only where "the manufacturer knew the identity, purpose and requirements of the customer and manufactured or delivered the goods specifically to meet those requirements." *Gurrola*, 774 F. Supp. 3d at 977 (cleaned up). Turek makes no allegations that Defendants knew his identity, his purpose or his particular requirements.

To be sure, the Court acknowledges Turek's point that the privity inquiry is often "fact-intensive" and thus cannot be resolved at the motion to dismiss stage. [28] at 16. While that may be true in other cases, this is not one of them. Any direct dealings between Defendants and Turek would necessarily be in Turek's possession or knowledge. If Turek cannot identify these dealings at the pleading stage, is it unclear how discovery would change this. And even assuming Defendants' knowledge of Turek's identity, purpose and requirements are not in Turek's possession, the Complaint is entirely devoid of allegations that would permit a reasonable inference that Defendants ever made a customized-cannabis product to meet Turek's specific needs.

For these additional reasons, Counts V and VI must be dismissed.

### G. Unjust Enrichment (Count VII)

In Count VII, Turek asserts that Defendants were unjustly enriched by their allegedly unlawful actions. [1-1]¶¶ 249–256. In Illinois, "[i]f an unjust enrichment

21

claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and [] will stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Turek concedes that his unjust enrichment claim relies in the same "overlapping deceptive conduct by Defendants as those in other claims." [28] at 18. As the Court has dismissed Turek's other claims, his claim for unjust enrichment also fails. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (dismissing plaintiff's claim for unjust enrichment where the underlying ICFA claim was dismissed); *Tyler v. Bank of New York Mellon*, No. 19 CV 7863, 2020 WL 2735367, at *10 (N.D. Ill. May 26, 2020) (same).

Because the Court dismisses Count VII on these grounds, the Court declines to address Defendants' arguments related to the merits of Turek's unjust enrichment claim.

## IV.    Conclusion

For the stated reasons, Defendant's Motion to Dismiss [24] is granted. The Complaint is dismissed without prejudice. Defendants' Motion for Oral Argument [30] is denied as moot. The Court will allow Turek to file an amended complaint if he can cure the deficiencies as discussed in this order. Turek should file a First Amended Complaint on or before April 15, 2026.

E N T E R:

Dated: March 13, 2026

MARY M. ROWLAND
United States District Judge